IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Case No.

| | |
|---|---|
| CHRISTOPHER M. COMISKEY,<br><br>    Plaintiffs,<br><br>v.<br><br>UNION COUNTY SHERIFF EDDIE CATHEY, in his official and individual capacities, and DONALD BRANDON CHRISTIAN, individually and in his official capacity as Sheriff's Legal Counsel and member of the Sheriff's "Executive Command Staff,"<br><br>    Defendants. | **COMPLAINT**<br><br>[JURY TRIAL DEMANDED] |

1.  Plaintiff Christopher ("Chris") Comiskey lives with his wife Victoria ("Tori") Comiskey in the Village of Marvin, North Carolina ("Village"). For more than two years, Chris and Tori have been at the forefront of a public protest of certain Village practices, including but not limited to the Village's unlawful acquisition of a public trail easement over the private common area of Chris and Tori's homeowners' association, Marvin Creek. Chris and Tori's participation in the efforts to resist and undo the Village's unlawful conduct have put them at odds with the Village's elected officials and influential Village residents, as well as certain politically connected non-resident investors and developers with financial interests in certain Village development projects, and Chris and Tori have received threats, both in-person and online, including anonymous threats.

2. Chris and Tori reported such threats to the Union County Sheriff's Office ("UCSO"). But the UCSO, after—at most—a cursory investigation, took no action. In October 2025, Chris emailed several Village officials, and Lieutenant James Maye, a UCSO deputy, demanding an explanation for, among other things, UCSO's failure to investigate Chris and Tori's reports.

3. Defendant Donald Brandon Christian, UCSO's "Chief Legal Counsel," responded for the UCSO by sending the letter attached as Exhibit B. In that letter, Christian accused Chris of defaming the UCSO and Lieutenant Maye, invited Chris to sue the UCSO, stating "I very much enjoy litigation. So, as the old movie says, 'go ahead, and make my day,'" threatened Chris with criminal charges, told Chris that he should "[h]enceforth . . . communicate through council [sic]," and told Chris that he was "not to contact any employee or agent of the Union County Sheriff's Office for any reason other than an emergency call to 911."

4. Chris and Tori have every right to ask questions of and complain about the officials, including law enforcement officers, responsible for good government and public safety in the Village. Christian's intentionally bullying, threatening, and over-the-top response to Chris's October 2025 email—the self-described official response of the UCSO—and the policy that the letter establishes, is free-speech retaliation in its purest form. This action follows.

Parties

5. Chris is a citizen and resident of Union County, North Carolina.

6. Defendant Eddie Cathey is a citizen and resident of Union County North Carolina, and the Sheriff of Union County, North Carolina, sued here in his individual and official capacities.

7. Defendant Donald Brandon Christian is a citizen and resident of Union County, North Carolina. He is the Chief Legal Officer of the UCSO and a member of the UCSO "Executive Command Staff." Defendant Cathey has delegated to Christian the right and authority to make legal determinations on behalf of the UCSO and to set the internal policy of the UCSO related to such legal determinations. That is, Defendant Christian is a final decision maker for the UCSO, including but not limited to with respect to the occurrences described in this Complaint.

## Jurisdiction & Venue

8. The Court has jurisdiction of the subject matter of this action arising out of federal law under section 1331 of title 28 of the United States Code.

9. The Court has jurisdiction over the Defendants named in this action pursuant to section 1-75.1 *et seq.* of the North Carolina General Statutes, and this Court may exercise such jurisdiction consistently with the minimum requirements of due process.

10. The Court is the proper venue for this action pursuant to section 1391(b) of title 28 of the United States Code.

## Waiver of Immunity

11. Defendants are not immune from liability for the claims asserted in this Complaint.

12. Alternatively, to the extent Defendants would otherwise be immune from liability for the claims asserted in this Complaint, Defendants have waived such immunity through participation in a risk pool or the purchase of insurance that provides coverages for the claims asserted in this Complaint.

Facts

13. The Village is a North Carolina municipal corporation situated in western Union County near the South Carolina border. Like many suburban areas near Charlotte, North Carolina, the Village is rapidly growing, and the planning and development challenges arising from that growth give rise, in turn, to many of the key issues facing the Village and its residents.

14. The Marvin Heritage District ("Heritage District") and the Marvin Creek Connector Trail ("Public Trail") projects illustrate such issues. The Heritage District is a concept developed by the Village's governing body, the Village Council, over several years. The idea is to develop a small town "main street" style area along Marvin School Road and New Town Road, near the new Village Hall. The Heritage District is still in its early phases, but if the Village proceeds, the Heritage District will transform what is currently a residential or rural residential area into a busy commercial, retail, and restaurant space.

15. The Public Trail project was developed with and as part of the Heritage District project and seeks to connect several of the Village's larger subdivisions, including Chris and Tori's subdivision, Marvin Creek, with the planned offices, retail

shops, and bars and restaurants in the Heritage District, by way of a public walking trail.

16. In November 2023, the president of the board of directors of the Marvin Creek Community Association, Inc. ("Marvin Creek HOA"), signed a "Trail Easement Agreement" that purported to convey a perpetual easement to the Village for the development and maintenance of a "trail and related improvements" across the Marvin Creek HOA common area ("Trail Easement"). The Village was to pay $1 in exchange for the Trail Easement.

17. The Trail Easement is illegal and void. The members of Marvin Creek HOA never approved the Trail Easement as required by section 47F-3-112 of the North Carolina General Statutes. And the Declaration of Covenants, Conditions, and Restrictions for Marvin Creek states plainly that "notwithstanding" any other provision of the Declaration, the Marvin Creek HOA common area "shall remain private," except in limited circumstances not applicable here. Still, the Village took the Trail Easement, has refused to rescind the Easement, and has cleared portions of the Trail Easement in preparation for the development of a public walking trail over the Trail Easement.

18. Chris and Tori took the lead in many respects in challenging the Trail Easement, including by voicing their opposition in public meetings and communications with local officials dating back to 2024. Although the Heritage District and the Public Trail projects are and have been very unpopular in the Village,

Chris and Tori's efforts have put them in the crosshairs of the Village officials and influential (although minority) groups of Village residents that support the projects.

19. On January 1, 2024, Derek Durst, a Village resident, former Village employee, and a supporter of the Heritage District and Public Trail, was walking on the Easement and saw Chris, whose family (including Chris and Tori's young children) was out playing in Chris and Tori's backyard. Durst began talking to Chris, and Chris eventually told Durst that Chris believed the Trail Easement was illegal. Durst responded angrily and told Chris that if he ever saw Chris in the area again (recall that Chris lives in the location where this conversation occurred), that Durst would "mess/cut" Chris up.

20. Chris and Tori reported Durst's behavior to the UCSO. The Village does not have its own police department—the UCSO provides law enforcement services to the Village under an agreement with the Village. In any event, Durst was never charged with any crime arising out of the January 1, 2024, confrontation.

21. In 2025, Chris and Tori stepped up their efforts to speak out against the Heritage District and Public Trail projects, as well as the Village's unlawful attempt to further those projects through extraordinary means, including the acquisition of the Easement. Most significantly, Chris and Tori filed a lawsuit—*Comiskey, et al. v. Village of Marvin, et al.*, 25CV000445-890—in the Superior Court of Union County, North Carolina. In that lawsuit, Chris and Tori sought a judicial declaration that the Trail Easement was void. Chris and Tori also brought claims against the Village and one Village Councilmember, Kim Vandenberg, for, among other things, violation of

Chris and Tori's federal rights. The Village removed the action to this Court. Promptly thereafter, the Court severed the declaratory claims and the claims for monetary damages and remanded the declaratory claims to state court. In July 2025, the Superior Court of Union County dismissed the claim for declaratory judgment. But, after Chris and Tori appealed, the Superior Court of Union County entered an order enjoining the Village from developing the walking trail during the pendency of Chris and Tori's appeal. As a result, the Village has not proceeded with any further development of the trail on Marvin Creek HOA common area.

22.   But Chris and Tori's efforts were not limited to the lawsuit. They also continued to attend and voice their opposition at open meetings of the Village Council. For example, the Village, in an effort to suggest that their development projects had substantial public support, published a "word cloud" that purported to aggregate and display the words most used in community feedback related to the projects. At a "Coffee with Council" meeting, Chris noted that certain words, including "not," "more," "commercial," and "development" had been removed from the word cloud in an apparent effort to make the community's feedback on the projects appear more positive than it actually was. That is, four of the five most commonly used words (not, more, commercial, development), the words that would have otherwise stood out as the largest on the page, had been removed from the word cloud. At the Village Council's regular meeting in August 2025, Chris addressed the issue during public comments, after which the Mayor asked Lieutenant Maye whether Chris could be

arrested if Chris were to address the same topic in the same manner again. Lieutenant Maye did not directly respond.

23. On October 23, 2025, Chris sent an email to the Village Council, Christian, Lieutenant Maye, a lawyer for the Village, several news outlets, and a group of concerned Village residents, in which Chris demanded answers for Pollino and Lieutenant Maye's conduct, including at the August 2025 public meeting. The email that Chris sent is attached as Exhibit A.

24. On October 28, 2025, Christian sent a letter to Chris in response to his email. Among other things, the letter:

    a. Accuses Chris of defamation of a law enforcement officer and the UCSO, including by making "provably false and defamatory claims against the UCSO and its employees."

    b. "[S]trongly question[s] the validity" of Chris and Tori's claims against the Village.

    c. Tells Chris that any statement indicating that the UCSO or Lieutenant Maye "has engaged in corruption . . . . will not be tolerated."

    d. Tells Chris that "I [meaning Christian] very much enjoy litigation. So, as the old movie says, 'go ahead, and make my day.'"[1]

    e. Tells Chris that "Legal actions come with risks," and that "I [meaning Christian] have advised Lt. Maye that if you file any sort of action

---

[1] The quote is from a scene in the film *Sudden Impact*, in which a cop, Harry Callahan, shoots and kills a group of robbers in a diner.

against him in his personal capacity that he counterclaim against you for defamation and abuse of process," and that "[i]f you file any action against the UCSO or any of its employees in their official capacities, I will pursue abuse of process claims against you, including punitive damages and attorney's fees."

  f. Refers to Chris's efforts to stop the Village from its unlawful course of conduct as "nonsense."

  g. Threatens Chris with criminal prosecution for the unauthorized practice of law.

  h. Tells Chris not to communicate with the UCSO except through a lawyer.

  i. Tells Chris not to contact the UCSO except through 911 and then only in case of an emergency.

25. On election day in November 2025, Chris received an anonymous text message that said, without explanation, "Please don't do this again. I hope we can get along peacefully." Chris interpreted the text as a threat and, as he was instructed to do, contacted the UCSO through the 911-emergency call system. UCSO took no action on Chris's report other than to close the report and mark it "leads exhausted."

26. Chris also sought, after October 28, 2025, to have Christian's letter and UCSO's decision to restrict services to Chris reviewed internally at UCSO. Chris called 911, as he was instructed, to make that request. But his request was routed to Lieutenant Maye. UCSO took no steps to rescind or change Christian's directives in his October 28, 2025, letter.

## Claim 1 – 42 U.S.C. § 1983
(against all Defendants, for unlawful retaliation for protected speech)

27. Plaintiff incorporates the above allegations by reference.

28. Section 1983 of title 42 of the United States Code provides in pertinent part that "[e]very person who, under color of statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in action at law, suit in equity, or other proper proceeding for redress."

29. The First Amendment to the U.S. Constitution guarantees the right to free speech.

30. The First Amendment's guarantees are incorporated against the States by the Due Process Clause of the Fourteenth Amendment.

31. Christian is the Chief Legal Officer and a member of the Executive Command Staff of the UCSO and, at all relevant times, was acting in such capacity and under color or law within the meaning of section 1983.

32. While acting under color of law, Christian (a) made frivolous accusations against Chris, (b) threatened Chris with the litigation of frivolous claims, (c) threatened Chris with criminal investigation and prosecution, (c) threatened Chris with reports to licensing authorities, (d) invited Chris to sue the UCSO using a quote from a movie scene in which a police officer kills three men, and (e) restricted Chris's right to report criminal conduct or safety concerns to UCSO, the only law enforcement

agency serving the Village, all in retaliation for the content of Chris's October 23, 2024, email.

33. Christian's statements would chill a person of ordinary firmness from exercising their free speech rights.

34. Christian's statements reflected the official policy or custom of UCSO. As Christian explains in his letter, he was and is the Chief Legal Officer of the UCSO, sending a response that "fall[s] squarely within [his] area of responsibility." Christian's response was sent on UCSO letterhead and refers to actions that Christian said he intended to take on behalf of the UCSO with no reference to any referral to a supervisor or other authority or decision maker.

35. That is, Christian's response is attributable to the UCSO and Cathey for purposes of section 1983 liability.

36. As a direct and proximate result of Christian's response, Chris has suffered damages in an amount to be proven at trial.

37. Christian acted with malice in the violation of Chris's rights such that Chris is entitled to punitive damages from Christian under Chapter 1D of the North Carolina General Statutes.

Claim 2 – Declaratory Judgment

38. Plaintiff incorporates the above allegations by reference.

39. A dispute exists between Chris, Cathey, and Christian related to the validity of Christian's decision to restrict Chris's access to law enforcement services by way of his October 28 letter.

40. Specifically, UCSO has acted as if Christian's letter is the final policy statement on the issue. Chris has attempted to seek internal review of the letter at the UCSO, but his efforts have been ignored.

41. Chris is entitled to an order declaring Christian's retaliatory letter and any policy based on Christian's retaliatory letter to be void and of no effect and further declaring that Chris's access to law enforcement services cannot be restricted in retaliation for Chris's protected speech.

## Prayer for Relief

Wherefore, Chris and Tori respectfully pray that the Court award them the following relief:

1. Trial by jury as to all matters so triable;

2. Compensatory damages from Defendants;

3. Punitive damages from Defendants;

4. Pre- and post-judgment interest on any award of damages to the extent the law allows;

5. An award of attorney's fees and costs to the extent the law allows;

6. Declaratory relief as set forth above and injunctive relief as appropriate to protect Plaintiff's rights; and

7. Such other relief as the Court deems just and proper.

This 27th day of February, 2026.

Respectfully,



By: <u>/s/ Bo Caudill</u>
Bo Caudill
N.C. Bar No. 45104
bocaudill@villmercaudill.com
VILLMER CAUDILL, PLLC
P.O. BOX 18186
Charlotte, NC 28218
Tel: 704-216-8120
Fax: 704-705-8191
*Counsel for Chris Comiskey*